UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

KINGVISION PAY-PER-VIEW, LTD.,
as Broadcast Licensee of the October 2, 2004
Trinidad/Mayorga Program,

                         Plaintiff,

  -against-

PEDRO FERNANDEZ, Individually, and d/b/a J & R
GROCERY a/k/a J & R GROCERY STORE a/k/a J & R
GROCERY AND DELI a/k/a J.R. GROCERY & DELI
a/k/a JR GROCERY, J & R GROCERY a/k/a J & R
GROCERY STORE a/k/a J & R GROCERY AND DELI
a/k/a J.R. GROCERY & DELI a/k/a JR GROCERY,

                        Defendants.
------------------------------------------------------------------------ X

**REPORT AND RECOMMENDATION**

05-CV-3094 (ERK)

MATSUMOTO, United States Magistrate Judge:

       By order entered on December 9, 2005, Chief United States District Judge Edward R. Korman referred this matter, pursuant to 28 U.S.C. § 636(b), to the undersigned for an inquest on damages, following a motion by plaintiff for the entry of a default judgment against defendants for alleged violations of 47 U.S.C. §§ 553, 605(a) and 605(e)(4), and a notation of default by the Clerk of the Court entered on November 28, 2005. Plaintiff's default motion seeks statutory damages of up to $10,000, and enhanced damages of up to $100,000, against each defendant. Plaintiff also seeks attorneys' fees, costs and an injunction against each defendant.[1] Defendants have not submitted any opposition to plaintiff's motion, despite

---

[1] In its motion for default, plaintiff also sought pre-judgement interest pursuant to N.Y. C.P.L.R. § 5001, but withdrew that request in a letter dated May 15, 2006. Accordingly, the Court will not consider plaintiff's application for pre-judgement interest.

receiving notice and an opportunity to do so.  (See Docket Nos. 6 and 11, Certificates of Service.)

For the reasons set forth below, it is respectfully recommended that a default judgment be entered against the defendant business Establishments, but not the individual defendant, in the total amount of $5,050, inclusive of basic and enhanced statutory damages of $4,000, attorneys fees of $600 and costs of $450.  Furthermore, it is respectfully recommended that plaintiff be awarded post-judgment interest, and that plaintiff's request for a permanent injunction be denied.

## I.  BACKGROUND

According to the complaint, plaintiff Kingvision Pay-Per-View, Ltd. ("Kingvision") owns the right to distribute the television broadcast of a boxing match between Felix Trinidad and Ricardo Mayorga (the "Trinidad/Mayorga match" or the "Event"), scheduled for October 2, 2004, via closed-circuit television and encrypted satellite signal.  (Docket No. 1, Complaint ("Compl."), ¶ 12; Docket No. 11, Plaintiff's Affidavit for Default ("Westrich Aff."), ¶ 3.)  Plaintiff made an exclusive agreement with Don King Productions to distribute the Event, and then marketed the broadcast to commercial entities in New York State.  (Westrick Aff., ¶ 3.)

Prior to the broadcast of the Trinidad/Mayorga match, plaintiff hired an auditing company, Signal Auditing, Inc. ("Signal"), to contract with independent auditors who would identify establishments that unlawfully exhibited the Event.  (Id. ¶ 4.)  Plaintiff provided Signal, which in turn provided its auditors, with a list of sites authorized to exhibit the Event to ensure that auditors visited sites not on the list during the time of the broadcast; thus, auditors would

visit only locations where the event was not authorized to be exhibited. (Id. ¶ 5.)

According to the complaint, defendants "unlawfully intercepted, received and/or de-scrambled said satellite signal and did exhibit the [Event]...willfully and for the purposes of direct or indirect commercial advantage or private financial gain." (Compl. ¶ 15.) Defendants did not purchase the rights to exhibit the match from plaintiff. (Westrich Aff. ¶ 6.) Plaintiff alleges that on October 2, 2004 at approximately 11:30 p.m., Thomas Larkin, an independent auditor, entered defendants' premises at 675 5th Avenue, Brooklyn, New York (the "Establishment"), and observed the Event being exhibited on one television set to approximately 16 patrons. (Id. ¶ 7; Piracy Affidavit of Thomas Larkin dated October 8, 2004 ("Larkin Aff."), annexed to Westrich Aff. as Ex. D.) Larkin estimates that the capacity of defendants' establishment was 30 people. (Larkin Aff. at 2.) While there, he took three headcounts and counted 16 people each time. (Id.)

Plaintiff claims that the Event programming "cannot be 'mistakenly or innocently intercepted.'" (Westrich Aff. ¶ 10.) Rather, plaintiff alleges that defendants "used an illegal satellite receiver, intercepted plaintiff's signal and/or used an illegal cable converter box or device to intercept plaintiff's broadcast. . ." or otherwise misrepresented the establishment as a residential property to purchase the broadcast at the lower residential price. (Compl. ¶ 16; Westrich Aff. ¶ 10.)

## II. DISCUSSION

A. **Default Judgment Standard**

Rule 55(b) of the Federal Rules of Civil Procedure provides that when a party moves for judgment against an adverse party who has failed to answer or otherwise appear in the action, the Court may enter judgment against the defaulting party. When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as for the claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Moreover, an inquest by affidavit, without an in-person hearing, may be conducted as long as the court can ensure "a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Thus, the movant need only show adequate support for the relief it seeks. Greyhound, 973 F.2d at 158-59.

Plaintiff has made a motion for default judgment and defendants have failed to respond to the complaint or oppose plaintiff's motion for default judgment. Given defendants' opportunity to respond and apparent lack of interest in the proceeding, there is no reason to delay the proceeding any further. Judgment by default is therefore appropriate, and accordingly, it is respectfully recommended that default judgment be entered against the business entity defendants in the amount specified below.

**B.** **Liability**

As noted above, plaintiff's complaint invokes 47 U.S.C. §§ 553 and 605 as bases for relief. In its motion for default judgment, however, plaintiff appears to abandon the claim based on 47 U.S.C. § 553 because it fails to mention that section. Notwithstanding the discrepancy, the Court will discuss liability under both 47 U.S.C. §§ 553 and 605, but will limit its consideration of damages to 47 U.S.C. § 605 for the reasons stated below.

Both sections 553 and 605 prohibit the unauthorized interception of cable broadcast transmissions. Section 553(a)(1) specifically applies to cable transmissions, providing:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

Section 605(a) applies to transmitted communications more generally, stating:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Section 605(a) applies to "the interception of cable-borne, as well as over-the-air, pay television where cable-borne transmissions originate as satellite transmissions." Kingsvision Pay-Per-View Corp., Ltd. v. Keane, 2006 WL 1704474, at *3 (E.D.N.Y. Jun 16, 2006) (quoting Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2d Cir. 1996) (internal quotations omitted)). Both statutes apply when television programming is transmitted or intercepted over both cable and satellite. Sykes, 75 F.3d at 130.

Plaintiff's complaint pleads the elements of liability required to state claims under both sections 553(a)(1) and 605(a). As described above, plaintiff has alleged that defendants could not have obtained transmission of the Event without performing one of several illegal acts to intercept plaintiff's cable or satellite transmissions. To the extent that the defendants stole services at the point that they were distributed via cable, defendants' acts constitute a violation of section 553(a). In addition, by intercepting and broadcasting the Event, which was conveyed via interstate satellite transmission (Compl. ¶ 12) and thus protected under section 605(a), defendants also violated section 605(a). See, e.g., Keane, 2006 WL 1704474, at *3 (finding violations of sections 553 and 605 when business entity intercepted and received satellite transmissions of a boxing match without authorization).

In Count II of the complaint, Plaintiff also seeks damages pursuant to defendant's alleged violation of 47 U.S.C. § 605(e)(4), which provides, in pertinent part:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

As recognized by several district courts, 47 U.S.C. § 605(e)(4) "is aimed at 'upstream manufacturers and distributors, not the ultimate consumer of pirating devices.'" DirecTV v. Neznak, 2005 WL 1353618, at *2 (D. Conn. May 10, 2005) (quoting DirecTV, Inc. v. Albright, 2003 WL 22956416, at *2 (E.D. Pa. Dec. 9, 2003)); see also DirecTV, Inc. v. Borich, 2004 WL 2359414, at *3 (S.D.W.Va. Sept. 17, 2004); Kingvision Pay-Per-View, Ltd. v.

Ruiz, 2005 WL 589403, at *1 (S.D.N.Y. Mar. 9, 2005 ) ("Section 605(e)(4) prohibits the modification of equipment used to assist in the reception of broadcasts and is 'targeted at the distributors of cable interception devices . . . and not at the end-users of such devices.'") (quoting Joe Hand Promotions, Inc. v. Hernandez, 2004 U.S. Dist. LEXIS 12159, at *3, 11-12 (S.D.N.Y. June 30, 2004)).

Plaintiff alleges that defendants violated section 605(e)(4) insofar as their agents or employees "knowingly . . . modified a device or utilized equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming . . . ." (Compl. ¶ 23.) Yet, plaintiff makes no factual assertion to support a finding that defendants are more than "ultimate consumers" or "end users" of an illegally modified device for purposes of liability under section 605(e)(4). Because the complaint lacks the necessary factual assertions to support a finding of damages under section 605(e)(4), the Court limits its finding of liability as to violations of sections 553 and 605.

**C.    Damages**

Plaintiffs seeking compensation for damages and lost profits can recover actual or statutory damages. See Time Warner Cable v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999); see also Garden City Boxing Club, Inc. v. Perez, 2006 WL 2265039, at *5-6 (E.D.N.Y. Aug. 8, 2006). In this case, plaintiff seeks statutory damages.

It is well-settled in the Second Circuit that a plaintiff cannot recover under both sections 553(a) and 605(a), but when the defendant is liable under both sections the court should award damages pursuant to 47 U.S.C. § 605 because it provides for greater recovery. See Sykes,

75 F.3d at 127; J & J, Inc. v. Mama Zee Rest. & Catering Servs., 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (holding that dual recovery under 553 and 605 is not permissible). Accordingly, plaintiff's request for damages will be considered only under 47 U.S.C. § 605. Unlike allegations pertaining to liability, those pertaining to damages are not deemed admitted in the context of default judgment. Greyhound, 973 F.2d at 158. Therefore, the movant must establish its entitlement to the recovery of damages. Id. As mentioned above, no hearing is required because plaintiff seeks statutory damages, rather than actual damages, and because defendants have not responded to plaintiff's allegations despite having notice and an opportunity to do so. Transatlantic Marine, 109 F.3d at 111 (quoting Fustok, 873 F.2d at 40).

Title 47 U.S.C. § 605(e)(3)(C)(i)(II) allows a party to recover an award of statutory damages "for each violation of subsection (a) . . . involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." In addition, section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) . . . ."

It is often difficult to assess damages based on "each violation" of the statute because 47 U.S.C. § 605 provides no statutory definition of the term "violation." See Garden City Boxing Club. Inc. v. Rosado, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005). "However, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." Perez, 2006 WL 2265039, at *5, (citing Time Warner Cable v. Taco Rapido Rest., 998 F. Supp. 107, 111 (E.D.N.Y. 1997)).

"In determining the amount of damages that can be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court." Perez, 2006 WL 2265039, at *5 (citing Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match) and Taco Rapido Rest., 998 F. Supp. at 111). Courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events. See Googies Luncheonette, Inc., 77 F. Supp. 2d at 489. The first method bases the award on the number of patrons in the establishment who viewed the broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cardona, 2004 WL 1490224, at *3 (S.D.N.Y. June 30, 2004) ($20 per patron); Taco Rapido Rest., 988 F. Supp. at 111 ($50 per patron); Mama Zee Rest., 2002 WL 2022522, at *4 ($50 per patron); New Contenders, Inc. v. Diaz Seafood Corp., 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) ($300 per patron). The second method awards a flat sum for each violation. See, e.g., Entm't by J&J, Inc. v. Suriel, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000); Kingvision Pay-Per-View Corp., Ltd. v. Papacito Lidia Luncheonette, Inc., 2001 WL 1558269, at *2 (S.D.N.Y. Dec. 6, 2001) (awarding $20,000); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001) (awarding $15,000).

In cases where there is uncontradicted evidence of the number of patrons viewing the match in an establishment, courts have used the first approach and multiplied the number of patrons by a set sum, plus any cover charges or other profits attributable to the unauthorized viewing. See Googies Luncheonette, 77 F. Supp. 2d at 489; see also Cardona, 2004 WL

1490224, at *3; Time Warner Cable v. Sanchez, 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003). This is based on the theory that the patrons who watched the unauthorized broadcast would have ordered it individually for residential use. See Googies Luncheonette, 77 F. Supp. 2d at 490.

Plaintiff seeks the maximum statutory damage award in this case. (Westrich Aff. at ¶ 16.) In particular, plaintiff argues that the appropriate measure of damages is the capacity of the restaurant. (Plaintiff's Inquest Memorandum ("Inq. Mem."), 2.)[2] Plaintiff cites two cases in which the court used the establishment's capacity, rather than the number of patrons counted by the auditor, as the measure of damages. See Garden City Boxing Club v. Bello, 2005 U.S. Dist. LEXIS 23115 (E.D.N.Y. Sept. 20, 2005) and Garden City Boxing Club v. Santacruz, 2005 U.S. Dist. LEXIS 25112 (E.D.N.Y. Sept. 20, 2005) (damages based on overall capacity because "it is entirely possible that at some point in the evening the restaurant did indeed hold the maximum number, if not more. . . ."). Although the auditor counted sixteen patrons in each of three headcounts he made, he was only present at defendant's establishment for four minutes and it is entirely possible that the establishment reached or exceeded maximum capacity. (Larkin Aff. at 1.) Similarly, it is entirely possible that the number of patrons never reached full capacity, and plaintiff has not submitted any evidence of the establishment's capacity other than the auditor's estimate. Thus, it is not appropriate to award damages on such a speculative basis. See Perez, 2006 WL 2265039, at *6 (noting that "[t]he Court is hesitant to extrapolate damage awards without such actual evidence").

In any event, the Court need not award damages based on the number of persons

---

[2] The Court notes that plaintiff failed to paginate its Inquest Memorandum.

who actually viewed the unauthorized broadcast or the capacity of the establishment, because plaintiff has set forth the licensing fee that it charged its legitimate commercial customers for authorization to exhibit the Event. (See Rate Card for Trinidad vs. Mayorga Event, annexed to the Westrich Aff. as Ex. B.) A commercial establishment would be charged $15 per seat and a $200 "DirecTV authorization fee."[3] See id.; see also Perez, 2006 WL 2265039, at *6-7. As mentioned above, plaintiff's investigative auditor's affidavit indicates that there were sixteen people in the Establishment at the time of the audit. (See Larkin Aff. at 2) Thus, the licensing fee that plaintiff would have charged defendants is $440.[4]

However, courts have recognized that the loss to the license owner is greater than simply the fees it would have earned if the illegal interceptor had purchased the right to view the broadcast; accordingly, a higher amount in statutory damages has been awarded to enhance the deterrent effect. See, e.g., Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec Y Caridad, 2001 WL 1586667, at *4 (S.D.N.Y Dec. 12, 2001) (assessing statutory damages at twice the actual cost of the violation to further deterrence); Cablevision Sys. New York City Corp. v. Cruz, 2001 WL 1388155, at *4 (S.D.N.Y. July 23, 2001) (same). "A damage award based exclusively on licensing fees . . . would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that Kingvision can charge for

---

[3] The Rate Card also provides for a $225 fee "for locations . . . which require an auditor . . . ." Although it appears from plaintiff's submissions that an independent investigative auditor was sent to the Establishment to count the number of persons viewing the unauthorized broadcast of the Event, plaintiff's request for costs, discussed *infra*, indicates that investigative costs totaled $350. For the reasons discussed *infra*, the Court will not award this additional $225 charge or the actual cost of its investigative auditor, $350, as part of the award of costs under 47 U.S.C. § 605(e)(3)(B)(iii) and Fed. R. Civ. P. 54(d)(1).

[4] [16 (people) x $15 = $240] + $200 (DirecTV authorization fee) = $440

-11-

sublicenses." Kingvision Pay-Per-View, Ltd. v. Ramirez, 2006 WL 2714703, at *3 (S.D.N.Y. Sept. 21, 2006) (citing New York City Corp. v. Faschitti, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996)). Because defendants have pirated plaintiff's broadcasts on at least one prior occasion (see Piracy Affidavit of Anthony Lazaro, annexed to Attorney Affidavit of Costs and Fees as Ex. B), the award should encompass not only the actual costs of the violation, but also provide for further deterrence. Plaintiffs should therefore be awarded twice the actual cost of the violation, or $880. See El Rey Del Bistec Y Caridad, 2001 WL 1586667, at *4. However, because this sum falls below the $1,000 statutory minimum, it is respectfully recommended that $1,000 be awarded in statutory damages. See Kingvision Pay-Per-View Ltd. v. Cazares, 2006 WL 2086031, at *4 (E.D.N.Y. July 25, 2006) (damage award raised to $1,000 because per-patron valuation was below the statutory minimum).

Plaintiff further seeks an enhancement of damages for willfulness up to $100,000, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). (Inq. Mem. at 3.) To receive enhanced damages, plaintiff must prove that defendants' display was willful and for "purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Courts typically consider the following factors in determining whether a defendant's willful conduct calls for enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." See Kingvision Pay-Per-View, Ltd. v. Recio, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

Plaintiff does not allege that defendants advertised or displayed the

Trinidad/Mayorga match to entice patrons into the Establishment, imposed an admission or cover charge, or that the Establishment brought in significant income as a result of displaying the Trinidad/Mayorga match. Plaintiff is nonetheless entitled to a further enhancement of the damages award because the record demonstrates that defendants affirmatively and willfully intercepted the Trinidad/Mayorga match for financial gain. (Compl. ¶ 15-16, 23, 29, 31.) It is clear in this case that defendants intercepted and exhibited the Event without entering into a licensing agreement with plaintiff or paying fees to plaintiff. Thus, they must have used unauthorized technology or illegally altered cable or satellite service in order to show the Event at their establishment. (Westrich Aff. ¶ 10; Compl. ¶ 16.) Furthermore, plaintiff's evidence that defendants pirated plaintiff's broadcasts on a prior occasion establishes that defendant acted willfully.

In circumstances demonstrating such willful violation, it is appropriate to assess enhanced damages in conjunction with basic statutory damages. As some courts have observed, awarding the statutory minimum prescribed "'would not be sufficient deterrence' since the penalty would merely be 'the amount that should have been paid.'" Cablevision Systems New York City Corp. v. Diaz, 2002 WL 31045855, at *4 (S.D.N.Y. July 10, 2002) (quoting Time Warner Cable v. Domsky, 1997 WL 33374593, at *6 (S.D.N.Y. Sept. 5, 1997)). In light of the statutory objective of deterring future violations of 47 U.S.C. § 605, coupled with defendants' willful violation of this provision, the Court finds that enhanced damages of $3,000, or three times the amount of basic statutory damages, are appropriate in this case. See, e.g., Keane, 2006 WL 1704474, at *6 (treble damages awarded for enhanced statutory damages) (citing Kingvision Pay-Per-View, Ltd. v. Body Shop, 2002 WL 393091, at *4 (S.D.N.Y. March 13, 2002) and Joe

Hand Promotions, 2000 WL 1610666, at *2 (where no special circumstances are shown, treble damages are a "reasonable deterrent against future violations")) (internal quotations omitted). Accordingly, it is respectfully recommended that plaintiff be awarded $1,000 in basic statutory damages and $3,000 in enhanced statutory damages, for a total damages award of $4,000.

### D. Attorneys' Fees and Costs

Plaintiff's motion requests attorneys' fees in the amount of $1,350 and costs in the amount of $800. (Affidavit of Julie Cohen Lonstein regarding fees and costs ("Lonstein Aff.") ¶¶ 3-4; Inq. Mem. at 7.) An award of costs, including reasonable attorneys' fees, is mandatory under 47 U.S.C. § 605. See 47 U.S.C. § 605(e)(3)(B)(iii). In the Second Circuit, a party seeking an attorneys' fees award "must support that request with contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Diaz, 2002 WL 31045855, at *5 (quoting New York. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

In support of plaintiff's request, plaintiff's counsel has provided records of work performed in litigating the instant action. Counsel's time record reflects an expenditure of 6 hours of attorney time at a rate of $200 per hour, as well as 2 hours of paralegal time at a rate of $75 per hour, totaling $1,350. (Lonstein Aff. ¶ 4.) Although Ms. Lonstein fails to explain her legal experience and background, these hourly rates appear to be reasonable. See Morin v. Nu-Way Plastering, Inc., 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (finding an hourly rate of $200-250 for senior associates to be reasonable); see also Wells Fargo Bank v. BrooksAmerica Mortg. Corp., 2004 WL 2754855, at *3 (S.D.N.Y. Dec. 1, 2004) (finding an

hourly rate of $220 per hour for associates with twelve years of experience to be reasonable); Martas v. Zaro's Bake Shop, Inc., 2002 WL 1267999, at *6 (E.D.N.Y. Mar. 29, 2002) (finding the hourly rate of $250 for a partner, and $200 for an associate practicing for eight years, to be reasonable). Likewise, the hourly rate of $75 for Ms. Lonstein's paralegal appears reasonable. See Morin, 2005 WL 3470371, at *2 (noting that in the Eastern District of New York, "[t]he prevailing rate for paralegals in $75.") However, because Ms. Lonstein has filed more than five hundred of these same types of actions, the 6 hours she expended here appear "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (noting that such costs should be excluded from an award of attorney's fees); see also J&J Sports Productions, Inc. v. Drake et al., No. 06 Civ. 246, 2006 WL 2927163, *7 (E.D.N.Y. Oct. 11, 2006) (reducing the amount of attorneys fees awarded to Ms. Lonstein because they appeared excessive); see also Joe Hand Promotions, Inc. v. Restrepo et al., 01-CV-3422, J&J Sports Productions, Inc. v. Smith, 06-CV-5164, and J&J Sports Productions, Inc. v. Graham et al., 06-CV-3384 (all filed in this district by Ms. Lonstein). For example, Ms. Lonstein claims that she spent 2.25 hours drafting the complaint and corporate disclosure, both of which appear to be similar to prior filings in other cases. Moreover, the .25 hours Ms. Lonstein spent to "review service" and the 2 hours spent drafting plaintiff's motion for default appear excessive. It is therefore respectfully recommended that plaintiff's request for attorneys' fees be reduced to a recovery for 2.25 attorney hours, plus 2 paralegal hours, for a total of $600.[5]

The Court has examined plaintiff's request for costs, as well as the documentary evidence that plaintiff has submitted in support of its request, and finds that it has incurred a total

---

[5] [$200 x 2.25 attorney hours = $450] + [$75 x 2 paralegal hours = $150] = $600

of $800 in costs as follows: $250 in court filing fees, $200 in process server fees for service on all defendants, (Lonstein Aff., Ex. A), and investigative expenses of $350 (id., Ex. D). The Court declines to award investigative fees which were incurred as part of plaintiff's business and prior to litigation. Accordingly, it is respectfully recommended that plaintiff be awarded costs in the total amount of $450. See Drake, 2006 WL 2927163 at *7 (declining to award investigative fees); Kingvision Pay-Per-View Ltd. v. Cardona, No. Civ. 3839, 2004 WL 1490224, *4 (S.D.N.Y. June 30, 2004); Joe Hand Promotions, Inc. v. Soto, No. 01 Civ. 0329, 2003 WL 22962810, *2 (S.D.N.Y. Dec. 17, 2003).

### E. Liability of Individual Defendant

Plaintiff's complaint names both Pedro Fernandez ("Fernandez") and the Establishment as defendants. Yet, plaintiff does not make any allegations or present other evidence regarding the role of Fernandez in relation to the Establishment, other than allege that he resides at the same address as the Establishment. (See Compl. ¶ 6.) To establish a contributory violation of 47 U.S.C. § 605(a), plaintiff must show that the named individual defendant "authorized" the violations set forth in the complaint. See Kingvision Pay-Per-View Ltd. v. Olivares, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (quoting Softel Inc. v. Dragon Med. & Sci. Communications, 118 F.3d 955, 971 (2d Cir. 1997)). "To establish vicarious liability, . . . [plaintiff] must show that . . . [the individual defendant] had a 'right and ability to supervise' the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." Id. (quoting Shapiro Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).

The Court cannot assume that Fernandez is the proprietor of the Establishment and had supervisory authority over the infringing activities, where plaintiff's submissions fail to establish Fernandez's position. The Court is not willing to find liability against the individual defendant based on mere speculation. The record contains no allegations of fact suggesting that Fernandez had a supervisory position or otherwise caused the infringing activity to take place. Thus, the Court finds that Fernandez is not jointly and severally liable with the other defendants for violations of 47 U.S.C. § 605(a), as discussed above. Accordingly, it is respectfully recommended that plaintiff's award be limited to a single recovery against the named defendant Establishments.

## F.   Interest

Post-judgment interest is available in civil judgments entered in federal court from the date of the judgment until paid. See 28 U.S.C. § 1961. Accordingly, it is respectfully recommended that post-judgment interest be awarded at the rate provided by law.

## G.   Permanent Injunction

Plaintiff also seeks permanent injunctive relief against defendants pursuant to 47 U.S.C. § 605(e)(3)(B)(i). The Court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Cablevision of S. Conn. v. Smith, 141 F. Supp. 2d 277, 287-88 (D. Conn. 2001). The first condition is met in this case because injunctions are remedies available under 47 U.S.C. §

605(e)(3)(B)(i). Nevertheless, the Second Circuit has cautioned that "injunctive relief does not follow automatically upon a finding of statutory violation . . . ." Town of Huntington v. Marsh, 859 F.2d 1134, 1143 (2d Cir. 1988).

Plaintiff must also show irreparable harm and the absence of an adequate remedy at law in order to obtain a permanent injunction. See Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975); New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989). To satisfy the irreparable harm requirement, a party seeking injunctive relief ordinarily "must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." NAACP v. Town of E. Haven, 70 F.3d 219, 224 (2d Cir. 1995) (citations omitted).

In this case, plaintiff has not made an adequate showing that it will likely suffer any imminent irreparable harm absent an injunction against defendants. (See Compl. ¶ 34.) The Court has found no evidence that the defendants would continue to harm plaintiff through violations 47 U.S.C. § 605, and is satisfied that basic and enhanced statutory monetary damages provide adequate remedies in the event that defendants commit similar violations in the future. Main Events/Monitor Productions v. Batista, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998) (injunctive relief denied when plaintiff failed to show that its remedy at law was inadequate and that it will suffer irreparable harm). Accordingly, because there is no evidence that the violations are continuing or that the statutory damages are insufficient to deter future conduct, it is respectfully recommended that plaintiff's request for a permanent injunction be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that a default judgment be entered against the defendant Establishments, and not the individual defendant, jointly and severally, in the total amount of $5,050 inclusive of basic and enhanced statutory damages of $4,000, attorneys fees of $600 and costs of $450. Furthermore, it is respectfully recommended that plaintiff be awarded post-judgment interest, and that plaintiff's request for a permanent injunction be denied.

Any objections to this Report and Recommendation must be filed with Chief United States District Judge Edward R. Korman within ten days of the date of its entry. Failure to object within ten days of the date of entry will preclude appellate review by the District Court. See 28 U.S.C. § 636(b)(1); Local Civil Rule 6.3; Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989). Any requests for extensions of time to file objections should be made to Chief Judge Korman.

Plaintiff shall serve, by hand or overnight delivery, a copy of this Report and Recommendation on defendants no later than January 9, 2007, and file an affidavit demonstrating service of the same.

**SO ORDERED**.

Dated: January 8, 2007
      Brooklyn, New York

                                                          /s/
                                          **Kiyo A. Matsumoto**
                                          United States Magistrate Judge
                                          Eastern District of New York